**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

| | | |
|---|---|---|
| **RONALD LAYNE HUTCHINS,** | § | |
| **Petitioner,** | § | |
| | § | |
| **V.** | § | **A-05-CV-522-LY** |
| | § | |
| **NATHANIEL QUARTERMAN, Director,** | § | |
| **Texas Dept. of** | § | |
| **Criminal Justice-Correctional** | § | |
| **Institutions Division,** | § | |
| **Respondent.** | § | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

To:     The Honorable Lee Yeakel, United States District Judge

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Petitioner's Application for Habeas Corpus under 28 U.S.C. § 2254 (Document 1); Petitioner's Memorandum in Support of Petition (Document 2); Petitioner's amendment to his application in which he specifically responds to trial counsel's affidavit presented during state habeas review (Document 6); Respondent's Answer (Document 20); and Petitioner's response thereto (Document 34).  Petitioner, proceeding pro se, has paid the filing fee for his application.  For the reasons set forth below, the undersigned finds that Petitioner's application for writ of habeas corpus should be denied.

## STATEMENT OF THE CASE

**A.    Petitioner's Criminal History**

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 331st Judicial District Court of Travis County, Texas, in cause number 00-5548, styled The State of Texas v. Ronald Hutchins.  Ex parte Hutchins, Appl. No. 61,762-01 at 23-27.  Petitioner was charged with murder on June 22, 2000.  Id. at 6-7.  He entered a plea of not guilty, but a jury found him guilty and assessed punishment at seventy-six years imprisonment and a $10,000 fine.  Id. at 23-27.

The Third Court of Appeals affirmed Petitioner's conviction on December 12, 2002. Hutchins v. State, No. 03-01-00670-CR, 2002 WL 31769017 (Tex. App.–Austin 2002, pet. ref'd). On September 10, 2003, the Texas Court of Criminal Appeals refused his petition for discretionary review.  Hutchins v. State, P.D.R. No. 0111-03.  Petitioner filed his state application for writ of habeas corpus on September 7, 2004, and the Texas Court of Criminal Appeals denied the application without written order based on the findings of the trial court without a hearing on April 20, 2005.  Ex parte Hutchins, Appl. No. 61,762-01 at cover, 64.  Petitioner executed his application for federal writ of habeas corpus on June 30, 2005.

**B.    Factual Background**

The factual background of this case is found in the Court of Appeals opinion and is repeated below.

> In February or March 2000, appellant met P.L. and on several occasions they smoked crack cocaine in P.L.'s apartment.  They established a friendship that soon developed into an active sexual relationship.  Appellant testified that on June 21, 2000, he was told that P.L. had an HIV infection.  Appellant had worked at a facility where HIV patients were treated and he was familiar with the drugs used in their

treatment.  Appellant found drugs for the treatment of HIV in P.L.'s closet.  Because he had engaged in unprotected sex with P.L., appellant became alarmed.  Accompanied by P.L., appellant went to a clinic to obtain HIV tests.  However, the clinic was closed and the next morning when they returned to the clinic it was still closed.  They returned to P.L.'s apartment.  They were both angry and exchanged profanity and obscene language.  Appellant threatened to file criminal charges against P.L. for infecting him and others with HIV.  A male friend of P.L., who was present in P.L.'s apartment that afternoon, testified that he heard appellant and P.L. arguing.  When the friend departed at about 8:00 p.m., appellant was sitting in front of the apartment drinking beer and P.L. told her friend she was going to lock the door and go to bed.

Appellant testified that P.L. taunted him about having had unprotected sex with him and with other men.  Appellant admitted he argued with P.L. about her lack of concern for having unprotected sex.  According to appellant, during their argument P.L. reached for a knife but he gained possession of the knife before she did.  Appellant then thought he saw P.L. reaching for something shiny and he stabbed her with the knife.  Appellant testified that P.L. pulled the knife from her body and chased him out of the apartment.  Appellant demonstrated before the jury his version of P.L.'s attack on him and how he acted in self-defense by stabbing her.

Responding to a "911 hang-up call" from P.L.'s apartment, City of Austin police officers found P.L.'s apartment door partially open, the lights off, and P.L. unconscious lying in a pool of blood on the floor.  Emergency rescue personnel were unable to resuscitate P.L..  Blood found on the appellant's clothing and shoes after he was arrested was determined to be P.L.'s blood.

The Travis County Chief Medical Examiner, Dr. Roberto J. Bayardo, performed the autopsy examination on P.L.'s body.  Dr. Bayardo testified that P.L. had three stab wounds in the chest and abdomen and a puncture wound in the right breast.  Dr. Bayardo found no defensive wounds and found nothing to indicate that P.L. had struggled.  P.L.'s knife wounds were consistent with wounds that would have been caused by the knife discovered near her body.  Based on the entry angle of the weapon that caused P.L.'s wounds, Dr. Bayardo believed P.L. was stabbed while lying down.  He testified that it was possible but unlikely that P.L. was standing when she was stabbed.  Dr. Bayardo testified that the cause of P.L.'s death was the stab wound that penetrated her heart and lung.

The jury was instructed on the law of self-defense and instructed to acquit appellant if they believed he had acted in self-defense.  The jury's verdict of guilty was an implicit finding rejecting appellant's claim of self-defense.

Hutchins v. State, No. 03-01-00670-CR, 2002 WL 31769017 at *1-2 (Tex. App.–Austin 2002, pet. ref'd).

**C.      Petitioner's Grounds for Relief**

Petitioner raises the following grounds for relief:

1.      Petitioner received ineffective assistance of counsel at trial when counsel:  (a) failed to consult and work with Petitioner; (b) failed to consult a forensic pathologist and blood splatter expert; (c) failed to thoroughly investigate defense witness Dr. Wright; (d) failed to interview Michael Limerick; (e) failed to properly cross-examine Dr. Bayardo; (f) failed to preserve his objection to the court's exemption of family members from the invocation of the rule; (g) failed to preserve his objection for appellate review regarding spectators wearing buttons displaying a photo of the victim;

2.      The cumulative effect of counsel's errors prejudiced Petitioner;

3.      Petitioner was denied effective assistance of counsel on appeal because counsel failed to challenge the sufficiency of the evidence in his petition for discretionary review; and

4.      The trial court abused its discretion when it:  (a) allowed spectators to wear buttons of the victim's picture; (b) allowed state witnesses to violate Texas Rules of Evidence Rule 614; (c) excluded medical and social records; and (d) refused to substitute counsel.

**D.      Exhaustion of State Court Remedies**

Respondent contends that Petitioner has not exhausted his state court remedies with respect to his claim of ineffective assistance of counsel for counsel's failure to preserve his objection to the trial court's exemption of family members from the invocation of the rule and to preserve his objection for appellate review regarding spectators wearing buttons displaying a photo of the victim. Respondent does not move to dismiss Petitioner's application for failure to exhaust his state court remedies.  Rather, Respondent argues the unexhausted claims are procedurally barred. Contrary to Respondent's contention, a review of the state court records submitted by Respondent shows that

4

Petitioner has properly raised these issues in his state application for habeas corpus relief.  See Ex parte Hutchins, Appl. No. 61,762 at 90.  Respondent does not contest that Petitioner has exhausted his remaining claims.

## DISCUSSION AND ANALYSIS

**A.**     **The Antiterrorism and Effective Death Penalty Act of 1996**

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA"],[1] which radically altered the standard of review by this Court in federal habeas corpus proceedings filed by state prisoners pursuant to Title 28 U.S.C. § 2254.  Under the AEDPA's new standard of review, this Court cannot grant Petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, 28 U.S.C. § 2254(d)(1)-(2).

The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of ... [the Supreme Court's] decisions as of the time of the relevant state-court decision."  Dowthitt v. Johnson, 230 F.3d 733, 740 (5th Cir. 2000) (quoting (Terry) Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 1523 (2000)).   The inquiry into whether the decision was based on an "unreasonable determination of the facts" constrains a federal court in its habeas review due to the deference it must accord the state court.   See id.

---

[1] Pub.L. No. 104-132, 110 Stat. 1214 (1996).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by ... [the Supreme Court] on a question of law or if the state court decides a case differently than ... [the Supreme Court] has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 740-41.

Section 2254(d)(2) speaks to factual determinations made by the state courts.  See 28 U.S.C. § 2254(e)(1).   While we presume such determinations to be correct, the petitioner can rebut this presumption by clear and convincing evidence.   See id.  Absent an unreasonable determination in light of the record, we will give deference to the state court's fact findings.   See id. § 2254(d)(2). With these principles in mind, this Court must now turn to the issues raised by the pleadings in this cause.

**B.      Ineffective Assistance of Counsel at Trial**

In his first ground for relief, Petitioner argues that he was denied effective assistance of counsel.  Petitioner states several reasons supporting his claim, including counsel's failure to: (1) consult and work with Petitioner; (2) consult a forensic pathologist and a blood spatter expert; (3) thoroughly investigate defense witness Dr. Wright; (4) interview Michael Limerick; (5) properly cross-examine Dr. Bayardo; (6) preserve his objection to the court's exemption of family members from the invocation of the rule [614 of Texas Rules of Evidence]; and (7) preserve his objection for appellate review regarding spectators wearing buttons displaying a photo of the victim.  Petitioner raised these same issues in his state application for habeas corpus relief.  The state courts rejected the merits of Petitioner's claim.  As such, the AEDPA limits the scope of this Court's review to determining whether the adjudication of Petitioner's claim by the state court either (1) resulted in

a decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision

that was based on an unreasonable determination of the facts in light of the evidence presented in

the state court proceeding.

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth

in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984):

> First, the defendant must show that counsel's performance was deficient. This
> requires showing that counsel made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
> Second, the defendant must show that the deficient performance prejudiced the
> defense. This requires showing that counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make
> both showings, it cannot be said that the conviction or death sentence resulted from
> a breakdown in the adversary process that renders the result unreliable.

Id. at 687, 104 S. Ct. at 2064. In deciding whether counsel's performance was deficient, the Court

applies a standard of objective reasonableness, keeping in mind that judicial scrutiny of counsel's

performance must be highly deferential. Id. at 686-689, 104 S. Ct. 2064-65. "A fair assessment of

attorney performance requires that every effort be made to eliminate the distorting effects of

hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

conduct from counsel's perspective at the time." Id. at 689, 104 S. Ct. at 2065. "Because of the

difficulties inherent in making the evaluation, a court must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance; that is, the

defendant must overcome the presumption that, under the circumstances, the challenged action might

be considered sound trial strategy." Id. (Citation omitted). Ultimately, the focus of inquiry must be

on the fundamental fairness of the proceedings whose result is being challenged. Id. at 695-97, 104

S. Ct. at 2069.  Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Id. at 687, 104 S. Ct. at 2064.

1.    <u>Failed to Consult and Work with Petitioner</u>

Petitioner alleged his trial counsel was ineffective for failing to consult and work with Petitioner.  Petitioner also alleged his counsel poorly investigated his case.  Petitioner contends there is a reasonable probability that the jury would have acquitted him of murder had his trial counsel interviewed Petitioner and learned with a degree of certainty where the victim's body was positioned when she was stabbed.

Petitioner's trial counsel, Kent C. Anschutz, provided his affidavit to the state habeas court.  <u>Ex parte Hutchins</u>, Appl. No. 61,762-01 at 129-31.  Anschutz asserted he was appointed to represent Petitioner after two previous court-appointed attorneys were relieved from representing him.  <u>Id.</u> at 129.  Anschutz explained he served as a Travis County Assistant District Attorney from 1985 through 1995, served as an Austin Associate Municipal Court Judge in 1996 and had practiced criminal defense law since 1997.  <u>Id.</u>  He asserted he is board certified in criminal law by the Texas Board of Legal Specialization.  <u>Id.</u>  At the time of the defendant's trial, counsel claimed he had tried approximately 75 felony jury trials, including many murder, aggravated robbery and aggravated sexual assault cases.  <u>Id.</u>  Counsel asserted he was well familiar with all statues, rules and procedures applied to Petitioner's case.  <u>Id.</u>  Anschutz further provided:

> The defendant proclaimed self-defense and sudden passion from counsel's first meeting with him.  Counsel's several meetings with the defendant were more than adequate to prepare to defend the defendant as the defendant never varied from

8

his same version of events and his intention to testify at every meeting.  No other witnesses existed to interview about what occurred between the defendant and the victim.  Counsel worked closely and extensively with a private investigator to secure evidence and testimony supporting the defendant's theory of the case.  It is important to note that defendant's Exhibit Seven, purported to show counsel's notes of actions taken in defending him, conveniently omits <u>22 pages</u> of additional notes of work done on his behalf by counsel.

Throughout counsel's representation of him, the defendant repeatedly refused to listen to or rebuffed counsel's expressed concerns about his taking the witness stand, the questionable success of a claim of self-defense or sudden passion and that a better strategy might be to require the State to prove an at best circumstantial case against him.  As the defendant insisted upon testifying to self defense and sudden passion (the only plausible line of defense in his mind only), these defenses counsel advanced to the best of his ability as clearly shown by the record in both phases of trial.

<u>Id.</u> at 129-30.

The state habeas court found:

a)      The applicant's attorney, Kent Anschutz, was familiar with all statutes, rules and procedures applicable to the applicant's case.

b)      Mr. Anschutz met with the applicant several times prior to trial to prepare to defend the applicant.  No other witnesses to the incident existed to prepare.

c)      Mr. Anschutz adequately investigated the applicant's case to secure evidence and testimony that would support the applicant's version of the facts.

<u>Id.</u> at 141.  The state habeas court found Anschutz's assertions and averments in his affidavit to be true and concluded Petitioner received reasonably effective assistance of counsel at trial.  <u>Id.</u> at 142.

The state court records reveal that counsel was well aware of Petitioner's self-defense argument, and consequently, the argument that the stab wounds were inflicted while the victim was standing.  5 SF 133-34; 6 SF 244-47, 250-51.  This Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.

2.     Failed to Consult a Forensic Pathologist and Blood Splatter Expert

Petitioner alleges counsel was ineffective for failing to consult with a forensic pathologist and a blood splatter expert.  Petitioner contends the forensic pathologist could have bolstered his argument that the victim was not lying down when she was stabbed.  Petitioner further contends the blood splatter expert would have shown the blood droplets on the bed were the result of the victim being at that edge of the bed and not as a result of someone rolling out of bed.  Petitioner asserts the blood on the bed was because the victim was sitting in an upright position when stabbed.

On state habeas review counsel averred:

> Counsel convinced the court to approve funds for a private investigator and a nationally recognized DNA expert.  From detailed and laborious discovery of the State's file, counsel knew that if the State's DNA evidence (the only physical evidence linking the defendant to the crime) could be discredited, the State's case would virtually evaporate.  Counsel had to make a decision as to what assistance was most critical in preparation of a defense.  Counsel also knew from long experience in this trial court that after approving considerable funds for the investigator and DNA expert, the court would not provide further funds to the defense for an independent forensic pathologist or a blood splatter expert.

> Most importantly, from pretrial interviews with the State's forensic pathologist and extensive review of his written report, counsel knew that the State's expert testimony was neutral in most respects and in some critical respects supported the defendant's version of events, ie:  illegal drugs in the victim's system, the victim possibly being active/aggressive for some time after being stabbed, etc.  From long experience, counsel also knew that the only readily available blood splatter expert was of questionable competence and that such testimony would simply suggest that the source of blood was from above the shoe, i.e:  a person either sitting or standing, not advancing the defendant's cause either way.  The defendant also assumes that independent experts would have supported his version of events and fails to consider the possible greater damage done to his case if such experts reached opinions and testified to such contradicting the defendant's version.

Ex parte Hutchins, Appl. No. 61,762-01 at 130.

The state habeas court found:

10

e)      Because Mr. Anschutz knew from experience as a defense attorney that additional funds from the court to pay for expert defense witnesses would be difficult to obtain, he decided to pursue funding for experts that were the most critical and useful to the applicant's case.

Id. at 141-42.  The state court concluded Petitioner received reasonably effective assistance of counsel at trial.  Id. at 142.

The state court's decision was not an unreasonable application of Strickland.  As noted by Petitioner, Dr. Bayardo testified that one of the three stab wounds was three inches deep, and the "stab track went from front to her back, slightly down and toward the midline." 5 SF 111.  The knife with regard to this stab wound "penetrated the chest cavity between the second or the third right ribs, and then it went through the right lung and into the right side of the heart." 5 SF 112.  With regard to the stab wound in the victim's abdomen Dr. Bayardo testified the wound was four inches deep, and the knife went through the victim's stomach and through the group of small intestines in front of the spine and the back.  5 SF 113.  Dr. Bayardo opined the victim was on her back when she was stabbed because most of her wounds were "on the horizontal and going from front to back." 5 SF 117.  According to Dr. Bayardo, if the victim would have been standing, the knife tracks would have been from front to back and downward at a more pronounced angle.  5 SF 117.  Despite Petitioner's argument, he clearly advanced his theory at trial that the victim was not stabbed while lying down.  On cross examination counsel pointed out "if a person was standing up, you would expect more likely a stab track to be in a kind of downward position." 5 SF 134.  Counsel noted two wounds were on a horizontal.  5 SF 134.  In addition, Bayardo admitted it was possible, but not probable, that the victim sustained her wounds while standing and that he could not state to a hundred percent degree of certainty as to what position the victim was in at the time she sustained her injuries.  5 SF

11

134.  Petitioner has not demonstrated the outcome of his trial would have been different had a forensic pathologist been hired to assist in his case.  His speculation simply doies not satisfy Strickland.

Similarly, Petitioner has not demonstrated the outcome of his trial would have been different had a blood splatter expert been hired to assist in his case.  The fact that the victim was sitting on her bed when stabbed as opposed to lying down in bed does little to advance Petitioner's self-defense theory.

> 3.     Failed to Thoroughly Investigate Defense Witness Dr. Wright

Petitioner alleges counsel was ineffective for failing to thoroughly investigate defense witness Dr. Wright regarding his opinion on tertiary syphilis and Michael Limerick's notes.  Specifically, Petitioner asserts that because of trial counsel's incompetence or laziness he placed on the stand a witness whose opinions were clearly opposed to Petitioner's defense.

On state habeas review counsel stated:

> Counsel called Dr. Wright to testify at the insistence of the defendant.  The witness never responded to telephone calls by counsel and had to be threatened with attachment to come to court at all.  Counsel had no choice but to call the witness to the stand with minimal preparation.  The Doctor's testimony reflected his obvious irritation at being forced to come to court at all.

Ex parte Hutchins, Appl. No. 61,762-01 at 130.  The state court found that counsel investigated Dr. Wright's role in the case, but that Dr. Wright was reluctant to testify.  Id. at 142.

At trial counsel asked Dr. Wright whether neurosyphilis can affect the brain and brain function.  6 SF 46.  Dr. Wright admitted that it could.  6 SF 46.  Counsel then asked whether, as a result, it could affect a person's judgment.  6 SF 46.  Dr. Wright testified:

Well, I don't know how you would argue that.  Or I'm sure that it can in the sense that we know that from preantibiotic eras, that syphilis probably caused insanity or was described as causing insanity in people.  But I think that what we find most common, though, is that what neurosyphilis causes in people that are – especially those that are infected with HIV, is it causes an – a severe inflammation in the blood vessels, or what we call vasculitis, and the patient will end up having a stroke.

6 SF 46-47.

Petitioner also complains of counsel's conduct with respect to notes made by Michael Limerick, stating he had some trepidation about the victim's ability to accurately relay information.  6 SF 36-37.  Dr. Wright testified he could not speculate on the note, since he was not the one who interviewed the victim on the day the note was made.   6 SF 37.

The state court's decision was not an unreasonable application of Strickland.  Petitioner has not demonstrated the outcome of his trial would have been different had Dr. Wright not testified.  Furthermore, the statement regarding Limerick's note was not made in the jury's presence.

4.   Failed to Interview Michael Limerick

Petitioner alleges counsel was ineffective for failing to interview Michael Limerick and secure his testimony.  Petitioner contends Limerick could have testified that the victim's "viral load" over a short period of time had increased.  Petitioner believed this would show that the victim was not taking her HIV medication as prescribed.

As explained by counsel, he did not call Michael Limerick to the stand because counsel only learned of Limerick's existence when reviewing confidential medical records that were only made available to counsel pursuant to counsel's subpoena and court order in the midst of trial.  Ex parte Hutchins, Appl. No. 61,762-01 at 130.  Counsel further explained the court ultimately refused to allow admission of such records and would have presumably prevented Limerick from testifying as

13

well even if he had been present.  Id.  The state habeas court found counsel became aware of Mr. Limerick's existence while reviewing confidential medical records that the court ultimately refused to admit into evidence.  Id. at 142.  The state court concluded Petitioner received reasonably effective assistance of counsel at trial.  Id.

The state court's decision was not an unreasonable application of Strickland.  Petitioner has not demonstrated the outcome of his trial would have been different had counsel located Limerick sooner.  The trial court excluded the medical records regarding the victim's viral load under Rules 401 and 403 of the Texas Rules of Evidence.  Because of these rulings, Petitioner has not shown Limerick would have been allowed to testify.  Moreover, Petitioner has not demonstrated the outcome of his trial would have been different had Limerick been allowed to testify.  As the trial court explained, the victim's viral load was irrelevant to Petitioner's self-defense theory.

5.   Failed to Properly Examine Dr. Bayardo

Petitioner alleges that his counsel was ineffective for failing to properly cross-examine Dr. Bayardo.  Petitioner asserts that because trial counsel chose not to consult an expert, he failed to expose any error in Dr. Bayardo's testimony regarding the direction of the stab wounds.  Petitioner is of the opinion that Dr. Bayardo's testimony was inconsistent with his medical report, and counsel should have impeached the doctor.

Petitioner states in his application that Dr. Bayardo testified that one stab wound indicated the knife track was slightly downward and his medical report showed that one of the wounds was slightly down.  This is not an inconsistency on which Dr. Bayardo could have been "impeached" as suggested by Petitioner.

On state habeas review counsel averred:

14

> Counsel elicited from the State's forensic expert much testimony that bolstered the defendant's version of events.  In conclusion of his cross-examination, counsel successfully elicited from the expert that the victim's wounds could have been caused with her body in the position that the defendant later testified it was.

Ex parte Hutchins, Appl. No. 61,762-01 at 131.  The state court found that counsel had adequately cross-examined the State's forensic expert and elicited several points that advanced Petitioner's theory of the case.  This Court has previously discussed the testimony of Dr. Bayardo.  The state court's decision regarding counsel's cross-examination was not an unreasonable application of Strickland.  Petitioner has not demonstrated that counsel was deficient or that he was prejudiced thereby.

### 6.    Failed to Preserve Objection Regarding Violation of the Rule

Petitioner argues counsel was incompetent because he allowed the trial judge to overrule his objection regarding whether family members, who were to testify during the punishment phase of trial, were exempt from the witness-exclusion rule.  Petitioner suggests counsel should have corrected the judge on his ruling.  Petitioner further suggests counsel should have gotten the names of the witnesses, who were allowed to remain in the courtroom, so that he could properly preserve this issue for appeal.

The transcript of the trial reflects several witnesses entered the courtroom while the court reporter was marking photographs with exhibit numbers.  4 SF 24.  They heard no testimony, and the witness coordinator removed them from the courtroom before any testimony was presented.  4 SF 24.  Counsel then objected to the remaining spectators, who were possibly punishment witnesses. 4 SF 25-26.  The trial court ruled pursuant to Rule 614, Subsection 4, that it was empowered to allow family of victims in a murder case to remain in the courtroom unless the court determines the

family's testimony would be materially affected if they heard other testimony at trial.  4 SF 27. Because the spectators would not be called as witnesses during the guilt-innocence phase of trial, the court held they could stay in the courtroom and their impact testimony would not be materially affected.  4 SF 27.

The court of appeals held the trial court's ruling was erroneous.  Hutchins v. State, No.03-01-00670, 2002 WL 31769017 at *5 (Tex. App.–Austin 2002, pet. ref'd).  However, it noted the record failed to show if any members of the victim's family who testified were in violation of "the rule." Id.

The state habeas court did not make specific findings with regard to this claim.  Nevertheless, the state court concluded Petitioner received reasonably effective assistance of counsel at trial.  Ex parte Hutchins, Appl. No. 61,762-01 at 142.   Petitioner has failed to provide the Court with any credible evidence establishing any of the witnesses violated the rule.  Petitioner's unsupported statements are insufficient to demonstrate counsel was deficient.  Moreover, Petitioner has failed to demonstrate any prejudice thereby.  As such, the state court's denial of Petitioner's claim was not an unreasonable application of Strickland.

### 7.   Failed to Preserve Objection Regarding Spectator Buttons

Essentially, Petitioner argues counsel should have been more specific in his objection regarding the spectator buttons.  Petitioner contends counsel should have pointed out for the record that the buttons were approximately four to five inches wide and that the spectators sat directly behind the prosecutor's table.  He further contends counsel should have polled each jury member to see if the buttons had an actual influence upon their decision.

16

Again, the state habeas court did not make specific findings with regard to this claim. Nevertheless, the state court concluded Petitioner received reasonably effective assistance of counsel at trial. Ex parte Hutchins, Appl. No. 61,762-01 at 142. Contrary to Petitioner's assertion, the state court records clearly demonstrate Petitioner's claim regarding spectator buttons was properly preserved for appeal. 4 SF 28-32. As such, the state court's denial of Petitioner's claim was not an unreasonable application of Strickland.

        8.      Cumulative Error

Finally, Petitioner argues the cumulative effect of the errors committed by his counsel was sufficient to constitute ineffective assistance of counsel. Federal habeas relief is only available for cumulative errors that are of a constitutional dimension. Coble v. Dretke, 444 F.3d 345, 355 (5th Cir. 2006); Livingston v. Johnson, 107 F.3d 297, 309 (5th Cir.1997). Because the Court has concluded that each of Petitioner's individual claims of ineffective assistance lacks constitutional merit, there is nothing to cumulate. See Miller v. Johnson, 200 F.3d 274, 286 n. 6 (5th Cir. 2000); see also Westley v. Johnson, 83 F.3d 714, 726 (5th Cir. 1996) ("Meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised."). Accordingly, the denial of Petitioner's claim by the state courts was not unreasonable.

        9.      Conclusion

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claim that he received ineffective assistance of trial counsel.

**C.     Ineffective Assistance of Counsel on Appeal**

Petitioner next argues he was denied effective assistance of counsel on appeal, because counsel failed to challenge the sufficiency of the evidence in his petition for discretionary review. The fundamental problem with Petitioner's claim is that his right to counsel ended once the appellate court rendered its decision.   The right to counsel does not extend to the filing of a petition for discretionary review.   See Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002) holding the constitutional right to counsel terminates once the appellate court issues its opinion and, therefore, appellate counsel's failure to notify the defendant of the outcome of the appeal cannot furnish a basis for a claim of ineffective assistance on appeal), cert. denied, 538 U.S. 969, 123 S. Ct. 1768 (2003); Jackson v. Johnson, 217 F.3d 360, 364-65 (5th Cir. 2000) (holding the constitutional right to the assistance of counsel on appeal does not extend to the filing of a motion for rehearing following disposition of the defendant's direct appeal).   The state court's denial of Petitioner's claim of ineffective assistance of appellate counsel was not an unreasonable application of Strickland.

**D.     Trial Court's Abuse of Discretion**

In his final ground for relief, Petitioner argues that the trial court abused its discretion when the judge allowed spectators to wear buttons of the victim's picture; allowed state witnesses to violate Rule 614 of the Texas Rules of Evidence; excluded medical and social records; and refused to substitute counsel.

It is not "the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).   A petitioner is thus entitled to federal habeas relief due to trial error only if

18

"the error 'had substantial and injurious effect or influence in determining the . . . verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

> [U]nder Brecht, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict. We recognize, however, that if our minds are "in virtual equipoise as to the harmlessness," under the Brecht standard, of the error, then we must conclude that it was harmful.

Mayabb v. Johnson, 168 F.3d 863, 868 (5th Cir.1999) (quoting Woods v. Johnson, 75 F.3d 1017, 1026-27 (5th Cir.1996)). To be entitled to federal habeas relief due to a trial error, the petitioner must show the error actually prejudiced him. Brecht, 507 U.S. at 637.

     1.    Spectator Buttons

At trial, counsel objected to members in the audience wearing buttons with the victim's picture. The trial court overruled counsel's objection and noted there were only three audience members out of five wearing buttons. 4 SF 30. The trial court further noted he had to put on his glasses to see the buttons, because he did not notice them when the victim's family entered the courtroom. 4 SF 31. He stated the buttons were not that noticeable. 4 SF 31. Witnesses, who were excluded from the courtroom, were not allowed to wear their buttons when they testified. 4 SF 31.

Petitioner raised this same claim on direct appeal. The appellate court rejected Petitioner's claim, holding Petitioner failed to show actual or inherent harm. Hutchins v. State, No.03-01-00670, 2002 WL 31769017 at *5 (Tex. App.–Austin 2002, pet. ref'd). In addition, the court held that Petitioner failed to show that this was the rare, extreme situation showing a reasonable probability that would influence the jury in its decision. Id.

The Supreme Court recently noted in <u>Carey v. Musladin</u>, ___ U.S. ___, 127 S. Ct. 649, 653 (2006), that the effect on a defendant's fair-trial rights of spectators wearing photo buttons was on open question.  In <u>Carey</u> the state court determined that Musladin had to show actual or inherent prejudice to succeed on his claim and concluded that the buttons "had not branded defendant with an unmistakable mark of guilt in the eyes of the jurors." <u>Id.</u> at 652 (citations omitted).  The Supreme Court concluded the state court did not unreasonably apply clearly established Federal law given the lack of holdings from the Court regarding the potentially prejudicial effect of spectators' courtroom conduct. <u>Id.</u> 654.  For this same reason the state court in Petitioner's case did not unreasonably apply clearly established Federal law.

    2.   <u>Violation of the Rule</u>

As mentioned earlier, the trial court ruled the victim's family members, who were not testifying during the guilt/innocence stage of trial, were exempt under Rule 614 of the Texas Rules of Evidence.  Petitioner challenged this ruling on appeal.  The court of appeals held the trial court's ruling was erroneous, citing <u>Ladd v. State</u>, 3 S.W.3d 547, 565-66 (Tex. Crim. App. 1999).  <u>Hutchins v. State</u>, No.03-01-00670, 2002 WL 31769017 at *5 (Tex. App.–Austin 2002, pet. ref'd).  However, it noted the record failed to show if any members of the victim's family who testified were in violation of "the rule." <u>Id.</u>

In his federal application for habeas corpus relief Petitioner argues Linda Moss testified at both the guilt/innocence and punishment stages of trial.  He complains she testified to more than the impact of the victim's death.  Specifically, he asserts she testified as to employment and the diseases' impact on the victim and explained away the victim's aggressive behavior.  He also claims Kimberly

Davis testified during the punishment phase and was allowed to testify regarding the victim's use of illegal drugs.

Importantly, Petitioner does not specifically allege Linda Moss, Kimberly Davis or any other witness was allowed to remain in the courtroom in violation of the rule. Petitioner provides no affidavits in support of his conclusory statements that witnesses were allowed to violate the rule. As such, he is not entitled to federal habeas relief. Alternatively, Petitioner is not entitled to federal habeas relief because he has failed to prove the alleged error had a substantial and injurious effect or influence on the jury's verdict. Petitioner's rank speculation is insufficient to support a claim for habeas relief.

       3.    <u>Medical and Social Records</u>

Petitioner argues the court erred in refusing to admit the medical and social records of the victim that showed the victim's viral load had drastically increased during a short period of time and that the victim engaged in unprotected sex despite her knowledge of having infectious diseases. Petitioner argues the records were relevant, and the trial judge failed to recognize the degree of Petitioner's need for the proffered evidence. Petitioner contends the evidence would have demonstrated the extent of the victim's disregard for her own life and that of others, and because the victim's sexual activity was the root cause of the argument which ultimately led to her death.

Petitioner raised this issue on appeal. The court of appeals noted, when the trial court excluded these exhibits, there was already substantial evidence in the record and it was uncontroverted that the victim was suffering from an uncontrolled HIV infection and the last stage of syphilis. <u>Hutchins v. State</u>, No.03-01-00670, 2002 WL 31769017 at *6 (Tex. App.–Austin 2002,

pet. ref'd). The court of appeals held the trial court did not abuse its discretion in excluding the proffered exhibits. Id.

Petitioner has not shown the exclusion of the proffered exhibits was error. As explained by Respondent, the documents were not relevant to Petitioner's claims of self-defense or sudden passion due to his own testimony. Petitioner testified during trial that he knew that the victim was HIV positive a full day before her murder. 5 SF 223-25, 256. Hutchins further testified the he stabbed the victim in reaction to seeing something shiny and her swinging at him. 5 SF 244-47, 250, 260-61. Based on Petitioner's own testimony, the "root cause" of the victim's death was his reaction to his belief that she was about to swing something shiny at him. Furthermore, Petitioner has failed to show that the exclusion of these records played a crucial, critical and highly significant role in his trial. As such, he is not entitled to federal habeas relief.

4.     Refused to Substitute Counsel

Finally, Petitioner argues the trial court erred in refusing to substitute counsel. Petitioner asserts he and trial counsel had disagreements over how to combat the State's expert testimony, that trial counsel had not done an independent investigation of his case, that trial counsel would not tell Petitioner what his defense would be, that trial counsel failed to prepare for trial, and that trial counsel was unwilling to communicate with Petitioner.

As explained by Respondent, "[c]onflicts of personality and disagreements between counsel and client are not automatic grounds for withdrawal." Solis v. State, 792 S.W.2d 95, 100 (Tex. Crim. App. 1990). The trial court has discretion whether to substitute counsel and "has no duty to search for counsel agreeable to the defendant." King v. State, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000). The right to counsel of choice does not extend to defendants who require counsel to be

appointed for them.  United States v. Gonzalez-Lopez, ___ U.S. ___, 126 S. Ct. 2557 (2006) (citing Wheat v. United States, 486 U.S. 153, 159, 108 S. Ct. 1692 (1988); Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624, 626, 109 S. Ct. 2646 (1989)).  The Court agrees with Respondent that it was reasonable for the trial court to deny Petitioner's request in light of the fact that Anschutz was Petitioner's third appointed trial counsel.  Tr. at 18-19, 34-35, 40-41.  The denial of Petitioner's claim was thus not unreasonable.

## RECOMMENDATION

It is recommended that Petitioner's application for writ of habeas corpus be denied.

## OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See 28 U.S.C. § 636(b)(1)(C);  Thomas v. Arn, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is

ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return

receipt requested.

SIGNED this 30th day of July, 2007.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE